1

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                        FOR THE DISTRICT OF OREGON

9

10  JEFFERY BRADLEY,                    )
                                        )    No.  CV 07-1870-HU
11                  Plaintiff,          )
                                        )
12       v.                             )    FINDINGS AND
                                        )
13  MAX WILLIAMS, et al.                )    RECOMMENDATION
                                        )
14                  Defendants.         )
    ────────────────────────────────   )
15
    Jeffery Bradley
16  788 W Sixth Avenue
    Eugene, Oregon 97402
17       Pro se

18  Hardy Myers
    Attorney General
19  Kristin A. Winges
    Assistant Attorney General
20  Department of Justice
    1162 Court Street NE
21  Salem, Oregon 97301
         Attorneys for defendants
22

23  HUBEL, Magistrate Judge:

24       The matter before the court is defendants' unenumerated motion

25  to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil

26  Procedure, on the ground that plaintiff has failed to exhaust his

27

28  Findings and Recommendation Page 1

inmate grievance remedies. (Doc. # 29).

## Factual Background

Plaintiff Jeffery Bradley is a former inmate at Snake River Correctional Institution (SRCI). He brings this action pro se, asserting claims under 42 U.S.C. § 1983, alleging that defendants, Oregon Department of Corrections (ODOC) supervisors and staff, failed to protect him from the risk of serious harm while he was an inmate at SRCI. The named defendants are Max Williams, Director of ODOC; Jean Hill, Superintendent of SRCI; C. Schultz, an administrator at SRCI; Ron Barras and Jason Rux, correctional officers at SRCI; and a John Doe.

Bradley alleges that in December 2005, while using the gym billiards room in an area designated Complex 3 (C3), he was assaulted by another inmate, Lockhart, as a result of which he lost a substantial portion of his left ear. Complaint ¶¶ 10-13. He alleges further that despite his requests to be housed elsewhere, the decision was made, after Bradley left the infirmary, to again house him in C3. On February 19, 2006, Bradley was assaulted again, by a different inmate, in the C3 dining area. He suffered a fractured nose. After that incident, Bradley was housed in a different area of SRCI. Id. at ¶¶ 14-16.

Bradley asserts that the defendants had actual knowledge of the substantial risk of serious harm to inmates at SRCI from other inmates while using the C3 gym and other areas within C3, where prisoners were not adequately supervised. Id. at ¶ 22. He claims that policies and customs have been developed and pursued that

Findings and Recommendation Page 2

created the substantial risk of harm to inmates at SRCI, including failure to 1) hire sufficient staff; 2) adequately train staff; 3) report and document threats made to inmates; 4) take steps after inmate assaults to determine whether staff misconduct led to the assault and whether remedial action was necessary; and 5) discipline staff. Id. at ¶ 24.

On January 31, 2006, Bradley filed a grievance, labeled 2006.02.001, complaining that the assault by Lockhart "would not have happened had staff or security devices such as cameras been present." Id. The grievance also stated that Bradley was being punished "by receiving unequal food and day room hours" in the infirmary, as compared to the general population. Affidavit of Teresa Hicks, Attachment 3. A response to the grievance, signed by Lt. R. Hults and dated February 16, 2006, states that

> [t]here are cameras in the gym that do view a small portion of the pool room and as you well know that [sic] if you want to be involved in a fight there is nothing whether it be cameras or staff that can stop a fight from taking place. Cameras are great if someone is monitoring them at the moment the fight takes place but that still doesn't stop the action from occurring. After completing the interviews and reviewing the pool room area I see no fault of ODOC but find that your actions are the reason that this happened.

Id. at Attachment 4.

Bradley appealed the grievance to the second level on March 1, 2006, alleging that Lt. Hults

> failed to address unequal treatment in the infirmary housing which was a form of punishment, less day room than [general population], 3 showers a week, 4:30 a.m. wakeup ... 2 hours earlier than general population.

Id. at Attachment 5. In response to a question on the form asking,

Findings and Recommendation Page 3

"Describe what action you want taken to resolve the grievance appeal. (How can the problem be solved?)," Bradley responded:

> Full compensation and equal treatment in the infirmary housing, equal day room privileges, at the minimum 5 showers a week for those that can shower without assistance & 6:30 wakeup.

Id. The grievance appeal continued,

> SCRI security staff was negligent in their supervision of inmates ... on the day in question. Had SRCI staff been present they would have been able to promptly intervene as they did ... when I was again assaulted on 2-19-06. Had staff been doing their job SRCI officials would know exactly what happened in the pool room on 12-29-05. If video equipment were in place officials could simply review the footage. All the more reason to implement video equipment into the billiard rooms for future reference.
>
> * * *
>
> Lt. Hults neglected to address unequal treatment in the infirmary.

Id.

On March 21, 2006, Bradley received a memorandum from defendant Jean Hill, Superintendent of SRCI, responding to the grievance appeal. Id. at Attachment 6. The memorandum states that Teresa Hicks, Grievance Coordinator, was assigned to investigate the complaint. Id. The response continues,

> There was [sic] three staff supervising the Complex 3 gym area on the day this altercation occurred. Unfortunately, fights may still occur even with staff presence and security cameras.
>
> Inmates assigned to the Infirmary are not allowed the same privileges as those assigned to General Population. Like hospitals in the community, there are strict patient guidelines designed to create the optimum environment ... to recover. ...
>
> In any setting, there is no guarantee of complete safety. In a prison environment there is an understood inherent

Findings and Recommendation Page 4

> risk for inmates and staff members. However, there are
> many security practices in place to reduce the risk. ...
> There are also a number of surveillance cameras
> positioned throughout the institution. ...
>
> There is no substantiation that staff failed to protect
> you. ... When staff became aware of the altercation, they
> immediately responded to the situation. Your medical
> concerns were addressed and you were transported to the
> community hospital for further evaluation and treatment.

Id.

Bradley filed a second appeal of his grievance on March 30, 2006. Hicks Declaration, Attachment 7. In the section of the form asking, "Describe what action you want taken to resolve the grievance appeal. (How can the problem be resolved?)", Bradley wrote, "Full compensation & daily showers for those housed in the infirmary with a change of underwear." Id.

The second appeal contained Bradley's observation that on the day he was assaulted by Lockhart, one member of the prison staff was on the computer and the other two were standing against the wall talking. Id. Bradley stated that the three staff members

> compromis[ed] the safety & security of the facility by
> failing to monitor inmate activity in an area they knew
> was unsecure. Yet SRCI officials continue to allow
> inmates access to this area is a deliberate indifference
> to the health & safety of prisoners & is a breach of
> their duty to protect prisoners from unreasonable risk of
> assault by another inmate.

Id. The second appeal also dealt with the complaint about inmates housed in the infirmary receiving only three showers a week. Id.

SRCI Assistant Director Stan Czerniak responded to the second appeal on May 15, 2006. Hicks Affidavit, Attachment 8. Mr. Czerniak repeated the institution's reasons for not giving inmates assigned to the infirmary the same privileges as prisoners assigned to the

Findings and Recommendation Page 5

general population, and noted that "[h]ousing records reflect you have been released from the infirmary and are currently living in G[eneral] P[opulation]." Id. With respect to the complaint about the three staff members in the gym at the time of the assault by Lockhart, Mr. Czerniak wrote:

> According to Security Management staff, there was three staff assigned to the gym area on the day this altercation occurred. You alleged that two staff was [sic] standing against the wall talking and one Officer was using the computer. It is reasonable that staff use the computer system and talk to one another as they can verify inmate information such as medical needs, housing, security risks, etc. Surveillance cameras do not guarantee that an altercation would be prevented. Cameras would have provided video evidence on exactly what took place, but is not [sic] necessarily a deterrent for misconduct.
>
> [This] incident has been reviewed and there is no indication that staff acted with indifference or outside guidelines.

Id.

On March 27, 2006, Bradley filed a grievance relating to SRCI's failure to house Bradley somewhere other than C3 after he was assaulted by Lockhart, and stating that he had been assaulted on February 19, 2006 in C3. Hicks Affidavit, Attachment 9. Bradley wrote, "SRCI officials were aware of the threat to my safety by fellow inmates and acted with a 'deliberate indifference' towards my safety by failing to rehouse me in a different area of the institution." Id. Bradley requested compensation for his injuries. Id. The grievance was rejected as untimely on April 6, 2006, by Teresa Hicks. Hicks Affidavit, Attachment 10. Ms. Hicks wrote:

> The original grievance dated 3/27/06 and received 3/30/06 is being returned to you without action. ... Even though it is too late to file a grievance, you can address your

Findings and Recommendation Page 6

concerns with either Captain Milhorn or the Security Manager. (Note: there is no compensation available through the grievance process.)

Id. [1]

## Discussion

Defendants move to dismiss on the ground that Bradley failed properly to exhaust his administrative remedies, as required by the Prison Reform Litigation Act (PLRA), 42 U.S.C. § 1997e(a), which provides that "no action shall be brought with respect to prison conditions under Section 1983 of this title or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Defendants assert that Bradley's grievance number 2006.02.001 was defective because 1) it requested review of two separate issues, the assault by Lockhart and the conditions in the infirmary, even though ODOC regulations prohibit inmates from grieving more than one issue per grievance, see OAR 291-109-140(1)(a); and 2) it failed to identify the individuals now named as defendants in this action, which defendants assert is contrary to OAR 291-109-140(1)(f) ("An inmate may only obtain grievance review of one DOC or OCE employee's actions/decisions on a single grievance form."). Additionally, defendants assert that Bradley failed to file a timely grievance with respect to the claim based on defendants' failure to rehouse Bradley after the assault by Lockhart.

---

[1] Under ODOC administrative rules, an inmate grievance, if not an emergency, must be submitted within 30 working days of the incident. OAR 291-109-0140(3).

Findings and Recommendation Page 7

Failure to exhaust administrative remedies is an affirmative defense which must be raised and proved by the defendants. <u>Jones v. Bock</u>, 549 U.S. 199, 216 (2007). If the court finds that the inmate has failed to exhaust administrative remedies, the proper procedure is for the court to dismiss the case without prejudice. <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1117 (9th Cir. 2002).

The exhaustion requirement applies to all inmate suits concerning prison conditions, whether they involve general circumstances or particular episodes. <u>Porter v. Nussle</u>, 534 U.S. 516 (2002); see also <u>Bennett v. King</u>, 293 F.3d 1096 (9th Cir. 2002). The exhaustion requirement of the PLRA means "proper exhaustion," <u>Woodford v. Ngo</u>, 548 U.S. 81, 93 (2006), which the Supreme Court has defined as compliance with the system's critical procedural rules, including timeliness requirements. <u>Id.</u> at 90. See also <u>Jones</u>, 549 U.S. at 217-18 ("<u>Woodford</u> held that 'proper exhaustion' was required under the PLRA, and that this requirement was not satisfied when grievances were dismissed because prisoners had missed deadlines set by the grievance policy.")

Bradley has not properly exhausted either of the claims asserted in his complaint. The claim that ODOC staff failed to protect him from the risk of serious harm at the time of the Lockhart assault is procedurally defective because grievance number 2006.02.001 contains more than one complaint--and in fact appears to focus primarily on conditions in the infirmary. Moreover, the grievance fails to identify any individual against whom the grievance is brought. Although the PLRA does not impose a "name all

Findings and Recommendation Page 8

defendants" requirement, see <u>Jones</u> 549 U.S. at 218("[E]xhaustion is not per se inadequate simply because an individual later sued was not named in the grievances"), proper exhaustion requires compliance with prison grievance procedures. <u>Id.</u> (it is the prison's requirements, not the PLRA, that define the boundaries of proper exhaustion.) ODOC grievance procedures, OAR 291-109-0140(f), provide that an inmate may only obtain grievance review of one DOC or OCE employee's actions/decisions on a single grievance form.

The grievance brought on March 27, 2006, relating to ODOC's failure to heed Bradley's request to be housed elsewhere, is procedurally defective because it was untimely.

None of Bradley's claims with respect to policies and customs that fail to provide adequate staffing levels and staff training, to report and document threats made to inmates, or to discipline staff, have been the subject of grievances.

I conclude, therefore, that this action should be dismissed without prejudice because Bradley has failed to exhaust his administrative remedies as required by the PLRA.

## Conclusion

I recommend that defendants' unenumerated Rule 12B motion to dismiss (doc. # 29) be GRANTED, and that this action be dismissed without prejudice.

## Scheduling Order

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due December 31, 2008. If no objections are filed, review of the

Findings and Recommendation Page 9

Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due January 14, 2009, and the court's review of the Findings and Recommendation will go under advisement with the District Judge on that date.

Dated this 16th day of December, 2008.




                                    /s/  Dennis James Hubel

                                        Dennis James Hubel
                                    United States Magistrate Judge

Findings and Recommendation Page 10